ALFRED G. W. CARTER, Respondent, *v.* GEORGE
TALLCOT, Appellant.

*Malpractice by an attorney — what constitutes it — what evidence is admissible to
establish it.*

Two actions were brought against the defendant, by one Moore, in one of which
he claimed to recover for commissions earned by him in securing the sale of
a medical compound, under a contract with the defendant, and in the other
he sought to recover damages for the breach of the said contract by the defend-
ant in discharging him before the expiration of the period mentioned therein.
In each action the defendant, acting under the advice of his counsel, set up as
a counter-claim a claim for damages which he had sustained by reason of the
failure of Moore to perform his contract; the counter-claim being considered
as a proper subject for trial before a jury. Upon the trial of the first action
which had been referred, the defendant's counsel withdrew from the considera-
tion of the referee all that part of the counter-claim which should exceed the
demand of the plaintiff therein. The referee in that action reported in favor
of Moore. Upon the subsequent trial of the second action, the court held that
the counter-claim was barred by what had taken place upon the trial of the first
action and refused to allow it to be proved.

In an action brought by the counsel to recover for services rendered to the
defendant in the actions brought by Moore:

*Held,* that he was guilty of such malpractice as deprived him of all right to recover
therefor.

The counsel for the defendant opposed the reference of the first action, which
involved the examination of a long account, claiming that its compulsory
reference was a violation of the Constitution of this State and of the United
States, and advised an appeal from the order to the General Term, with a view
to its final appeal to the Supreme Court of the United States. It was brought
by appeal to, and was affirmed by, the General Term.

*Held,* that the counsel should recover nothing for his alleged services in resisting
the reference, and that he should be compelled to indemnify the defendant,
against the expenses to which he had been thereby subjected.

Upon the trial of this action, questions put by the defendant to professional wit-
nesses to elicit their views as to the conduct of his counsel in these actions,
were excluded under general objections, no objection being taken to the form of
the questions or the manner in which they were propounded.

*Held,* that this was error; that the evidence offered was competent and should
have been received.

Appeal from a judgment in favor of the plaintiff, entered on the
report of a referee.

*R. H. Underhill,* for the appellant.

*William R. Garrard,* for the respondent.

DANIELS, J.:

The judgment was recovered for the amount found to be due to the plaintiff and Nelson Cross, who was his partner, and had assigned his interest in this demand to the plaintiff, for services performed by them as attorneys and counselors in the courts of this State for him. The defense relied upon by the defendant was that the services had been unskillfully performed by the plaintiff and his assignor, and that they were accordingly of no value to him, but involved him in loss which he would not otherwise have sustained. The services principally drawn in question were performed in two suits brought by Charles E. Moore against the defendant, upon a contract by which he had employed Moore to act as his agent in securing the sale of a medical compound made by him. In the first suit Moore claimed to recover for commissions earned by him, under the contract, during the month of September, 1874; and in the second suit the claim was for damages for breach of contract arising out of his discharge by the defendant before the expiration of the period mentioned in the agreement. The defendant, by way of defense, alleged the non-performance of the contract by Moore, through which he had sustained damages in his business to a large amount, which he presented as a counter-claim against the causes of action alleged by Moore against him. The answers were substantially the same in each case; and the action for the commissions, which was by far the least important of the two, was first brought to trial, and this counter-claim was presented as an answer to that action, but before it was submitted to the referee the defendant's counsel withdrew from his consideration all that part of the counter-claim which should exceed the demand of the plaintiff in the action. The referee in that action afterwards found and reported in favor of Moore, the plaintiff, and judgment was entered upon his report.

The second action afterwards came on for trial at the circuit, but before its trial leave was obtained to set forth, by way of reply, the judgment entered in the first action on the referee's report as a bar to the residue of the counter-claim relied upon in the answer in the

second suit. And under that reply it was held by the court that the defendant's counter-claim was barred by what had taken place upon the trial of the first action, and that this portion of his defense was accordingly out of the case. It appears by the evidence, and the fact was also found by the referee, that the defendant and his counsel regarded the counter-claim as a meritorious demand which might be sustained by evidence within the defendant's control on the trial of the action; and upon these facts the question accordingly arises whether their conduct was that of competent and skillful counsel in following the course they adopted concerning the counter-claim on the trial before the referee. This counter-claim was considered and regarded by them as a proper subject for trial before a jury, and they were apparently under the impression that they could make use of so much of it as would answer the claim made by Moore in his first action, and afterwards rely upon the residue, not only as a defense to the second action, but as the basis of a recovery for the balance against Moore, the plaintiff. This was manifestly and clearly an erroneous view to be taken of the rights of the defendant in the enforcement of the counter-claim, and which, according to the evidence of the assignor Cross, was not anticipated.

The law at that time, as well as at the present time, would not permit an entire demand to be divided in this manner. The defendant and his counsel had their election whether they would make use of the counter-claim in the first or second action, but they could not use it in both. This counter-claim arose out of the contract upon which Moore based his right to recover in each of these actions, and by section 150 of the Code of Procedure, which was at that time in force, it formed a legal answer to either of the actions brought by Moore, the plaintiff; and in either, under the authority of section 274 of the Code of Procedure, the defendant, upon supporting the counter-claim by proof, was entitled to relief by way of judgment in his favor after extinguishing by means of it the demand presented as the basis of the plaintiff's right of action; and that was the regular as well as the legal course to be followed if the counter-claim was used at all upon the trial of the first action before the referee. Neither the Code nor the settled principles of law not dependent upon it permitted the course to be taken which was adopted at the close of the evidence on the trial before the referee.

(2 Pars. on Cont. [6th ed.], 619, and cases in note; *O'Dougherty* v. *Remington Paper Co.*, 81 N. Y., 496, 499, 500.)

The law upon this subject was clear and unmistakable, and the facts subjecting this controversy to its application have not only been proved by the evidence, but they have been specifically found by the referee himself; and yet it was determined by him that the defendant's counsel in thus withdrawing from the consideration of the referee a part of the counter-claim exhibited such skill and exercised such diligence as is usual with lawyers of average learning and ability at the New York bar.

The evidence of the legal gentlemen who were examined upon the trial of the action, so far as it was permitted to be given, did not support this view of the conduct of the counsel. With certain qualifications those who were examined on behalf of the plaintiff did not disapprove of their conduct, upon the facts themselves as they were sustained and found; that the counter-claim was deemed to be a meritorious one; that the proper forum for its trial was that of a court and jury, and that the right so to try it was lost by what took place concerning it before the referee, but they did not approve of the practice followed by the defendant's counsel.

Neither can that be approved of by the well settled principles of the law which require that professional gentlemen engaging as attorneys and counselors in the service of others, shall be reasonably well informed of the legal principles applicable to, and governing the disposition of, the business committed to their charge. They are not to be held responsible for errors of judgment which may arise when that degree of care and attention has been devoted to their professional employment, as is ordinarily devoted by persons reasonably competent, experienced and well qualified for the discharge of professional duties of this description. But if they fail to inform themselves of statutory provisions, or well settled principles of law, readily accessible by means of ordinary care, attention and investigation, and in consequence of that failure the business committed to them is mismanaged, and the person or persons employing them are in that manner deprived of their legal rights, there they will not only forfeit all legal claim for compensation, but in addition to that be justly held responsible for any loss or injury sustained by means of such misconduct, by the person or

persons for whom they may be employed. This subject was considered in *Von Wallhoffen* v. *Newcombe* (10 Hun, 236), and in the course of the opinion of Presiding Justice DAVIS it was held that "the law requires that every attorney and counselor shall possess and use adequate skill and learning, and that he shall employ them in every way, according to the importance and intricacy of the case; and if a cause miscarries in consequence of culpable neglect or gross ignorance of an attorney, he can recover no compensation for any services which he has rendered, but which were useless to his client by reason of his neglect or ignorance." (Id., 240.) And the authorities referred to fully maintain this just and sensible legal principle.

Under the law as it has been settled, and the facts found by the referee himself, as they were established by the evidence in the case, the plaintiff was not entitled to recover for so much of the services of himself and his associate as had been performed in this manner, and by which the defendant was deprived of the right to try this counter-claim before a jury, and secure to himself the probable advantages of such a trial. The course which they elected to follow resulted in an adjudication against the defendant upon the counter-claim, which was a conclusive bar to the residue of it when it was brought up for consideration upon the second trial. And that could have been ascertained by them to be the law of the case by any reasonable or well directed effort that might have been made to discover it. They failed to acquire that knowledge, and accordingly failed to discharge the duties which the law imposed upon them under their employment to the defendant. And so far as they have been allowed to recover compensation in this action for such services the judgment is erroneous and cannot be sustained.

A reference of the first action was resisted by the defendant's counsel, and they appear to have entertained the conviction that the order referring the case was made in violation of the Constitution of this State and of the Constitution of the United States. Upon both these subjects they were under a palpable misapprehension of the law. For the Constitution of this State, as it was adopted in 1846, maintained the right to a trial by jury in that class of cases only in which it had been previously used. But previous to its adoption it was the common and well established practice of the courts to refer

the trial of actions which should involve the examination of long accounts, although either of the parties might oppose the order directing the reference. And the present Constitution of the State was adopted with that understanding of the law and designed to perpetuate it by restricting the right to trial by jury to cases in which it had previously been used. The Constitution of the United States, so far as it related to the right of trial by jury, was restricted to proceedings in the courts of the United States, and had no reference to actions arising under and prosecuted in the courts of a State. These were quite familiar principles, and yet the counsel for the defendant, when the order of reference was made, advised an appeal from it with a view of finally taking it to the Supreme Court of the United States on the ground that it violated the clause of the Constitution of the United States providing for jury trials. And under that advice an appeal from the order was taken to the General Term, where this as well as other views were impressed upon the consideration of the court. That appeal was determined adversely to the defendant, and no further proceeding was taken upon it. The legal views under which the appeal was taken in this manner were not sanctioned by the witnesses, who were sworn and examined before the referee, so far as their evidence was taken. But the referee in his conclusions considered that the defendant's counsel exercised such skill and diligence as is usual with lawyers of average learning and ability at the New York bar in advising and prosecuting the appeal on this ground.

But this was altogether too indulgent a view to be adopted of the skill and diligence required to be observed by a professional legal gentleman engaged in managing and caring for the legal interests of other parties. There was no plausible authority justifying or supporting the course that was taken upon this subject, and for the services of the counsel in that appeal they had no legal claim against the defendant, but should have been held liable to indemnify him against the expenses to which he was subjected in prosecuting that appeal.

Upon both these subjects, professional evidence proposed to be given by the defendant was excluded upon the trial. The questions which were asked were not objected to as being in any respect improperly framed or propounded to the several witnesses, but they

were objected to in the most general terms, and on such objections the answers were excluded. These questions were designed to elicit, in a more particular manner than had otherwise been shown, what the views of the witnesses to which they were put were concerning the conduct of the defendant's counsel. And they should have been permitted to be answered, for counsel, in framing hypothetical questions, have been held to be "not confined to facts admitted or absolutely proved, but facts may be assumed which there is any evidence on either side tending to establish, and which are pertinent to the theories which they are attempting to uphold." (*Dilleber* v. *Home Ins. Co.*, 87 N. Y., 79, 83.) And within that rule these questions should have been permitted to be answered.

In another action which had been prosecuted by the defendant, as plaintiff, an injunction had been set aside and proceedings were taken to ascertain the damages caused by the injunction to the defendant. And upon the reference ordered for that purpose, several days were consumed by the defendant's counsel in endeavoring to make proof of the fact that the defendant in that action had been guilty of a contempt by the violation of the injunction while it remained in force. In this manner expense had been incurred by the defendant, and he was also charged by the plaintiff for the value of these services performed by his counsel.

A series of questions were propounded in different forms to the witness Freling H. Smith, designed to elicit testimony indicating this conduct to exhibit the absence of ordinary professional skill and acquirements. The questions were put in proper form under the authority just referred to for the production of that character of evidence, but they were all, upon the most general objections, overruled and the answers were excluded. If some of these questions might be criticised as to their form, but which were not objected to on that ground, others were clearly free from objection, and the answers proposed to be taken from the witness should have been received. To the rulings made by the referee, excluding the evidence offered, exceptions were taken on behalf of the defendant; so they were as to his conclusions concerning the professional conduct of the defendant's counsel in the management of the counter-claim, and in the appeal from the order of reference ; and these exceptions seem to be very well founded. In the disposition of the objections, as well

as in the views adopted concerning the effect of the evidence, the learned referee was involved in error; and as those errors were substantially injurious to the defendant, the judgment in the case should be reversed and a new trial ordered, with costs to the defendant to abide the event.

DAVIS, P. J., concurred.

Judgment reversed, new trial ordered, costs to appellant to abide event.